FRANK & ASSOCIATES, P.C.
500 Bi-County Blvd., Ste. 465
Farmingdale, New York 11735
Tel. (631) 756-0400
Fax (631) 756-0547
nfrank@laborlaws.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

JASON JESSUP,

                    Plaintiff,

                        -against-

UNITED PARCEL SERVICE, INC. d/b/a UPS,

                    Defendant.

---------------------------------------------------------------------X

Case No: 17-cv-1501
Related Case: 16-cv-1309

**COMPLAINT**

***Jury trial demanded***

Plaintiff, JASON JESSUP, by his attorneys, FRANK & ASSOCIATES, P.C., as and for his complaint against Defendant UNITED PARCEL SERVICE, INC. d/b/a UPS ("UPS" or "Defendant"), respectfully sets forth the following:

## INTRODUCTION

1.    This is a civil action seeking monetary relief, injunctive relief, declaratory judgment, compensatory and punitive damages, disbursements, costs and fees for violations of the Plaintiff's constitutional and statutory civil rights brought pursuant to 42 U.S.C. § 1981 and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.*

2.    Specifically, Plaintiff alleges that Defendant, by and through its agents and employees, did negligently, wantonly, recklessly, intentionally, and knowingly seek to wrongfully

deprive Plaintiff of equal terms of employment by way or perpetrating, allowing, encouraging, condoning, failing to address, and attempting to cover-up discriminatory practices based on race, opposition to discriminatory practices, and *inter alia* by the placement of a *hangman's noose* in full view of Plaintiff and other employees within the workplace, with malicious intent and, alternatively, a clear, reckless, and unlawful disregard for the racial animus displayed by such an overt act.

3.    Plaintiff further alleges that Defendant condoned, permitted, and facilitated a pattern, practice, custom and policy of discrimination by routinely and systematically refusing to address the concerns of black employees within UPS and/or implementing policies or practices that discriminated against black employees.

4.    Defendant assigned Plaintiff more difficult routes in urban neighborhoods, segregated the truck line-ups to separate him and other black drivers and placed him under excess scrutiny, refused to acknowledge achievements or promote black employees, refused black employees overtime, implemented policies and practices meant to humiliate black employees, and overtly disciplined him and other black drivers for the same or similar infractions that did not result in discipline for non-black drivers.

5.    Plaintiff alleges that the acts complained of in the proceeding paragraphs were committed by the Defendant, its agents and employees, purposefully and with the intent to discriminate against Plaintiff based upon his race and color.

6.    Said acts were done knowingly, purposely, and with all intentions of depriving Plaintiff of his rights to be free of discrimination within his employment.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action and jurisdiction over Defendant pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.    This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims for unlawful employment practices occurred in Nassau County, New York.

9.    There are no administrative exhaustion requirements for bringing this civil rights action.

## PARTIES

10.   At all times relevant to the Complaint, Plaintiff JASON JESSUP was and is a resident of the County of Suffolk.

11.   At all times relevant to the Complaint, Plaintiff was employed by Defendant in its Uniondale facility located in Nassau County.

12.   At all times relevant to the Complaint, Plaintiff was an "employee" and a "person" within the meaning of Section 292(1) and Section 292(6) of the NYSHRL.

13.   At all times relevant to the Complaint, Defendant was and is a registered foreign business corporation, incorporated in Ohio and with a principal place of business in Atlanta, Georgia. Defendant has multiple locations throughout the State of New York.

14.   At all times relevant to the Complaint, Defendant has been and is an "employer" within the meaning of N.Y. Exec. Law § 290.

15.   Defendant provides a wide range of package delivery services to various locations throughout the United States and its territories and to foreign locations located beyond the boundaries of the United States and its territories.

16.   At all times relevant herein, Defendant employed no fewer than four (4) persons.

17.   Plaintiff JASON JESSUP is a black male.

## FACTUAL ALLEGATIONS

18.   Plaintiff began working for UPS as a full-time driver in or around August 2006, which

was the position he held until his termination in August 2015.

19.    Throughout his employment, Plaintiff was assigned to ethnic, violent and/or high-crime neighborhoods while less senior, non-black drivers were assigned the most desirable routes.

20.    When Plaintiff requested a new route in what UPS considered a "white" area, he was told no immediately.

21.    Plaintiff was also told by manager Kelly Luhrs that he was assigned to Roosevelt, a predominantly black neighborhood, "so you can be with your people."

22.    Defendant implemented policies and practices meant to ostracize, harass, and humiliate black employees.

23.    Rather than keep the delivery trucks lined up by route as was Defendant's practice, Defendant separated the line-up of trucks which caused Plaintiff's truck to be lined up in front of the main office by the cameras. This was not done to non-black employees.

24.    After an incident involving missing packages containing New York State inspection stickers on various routes, Defendant installed cameras behind Plaintiff's and another black employee, Ralston Boswell's, trucks. Other non-black employees such as Keith Varity who delivered on the routes that had missing New York State inspection stickers did not have cameras placed behind their trucks.

25.    In late 2013, after reporting that his hand truck was missing, Plaintiff was accused by Defendant of a scheme of stealing hand trucks for re-sale. Defendant then launched a multi-week investigation into Plaintiff. There was no factual basis to make such accusations against Plaintiff other than to discriminate against him on the basis of his race and color. Indeed, when Bill Burgess accused Plaintiff of stealing hand trucks, he said "I've seen this before. *People like you* are hard up for cash." It wasn't until it was determined by the

4

police that a Freeport resident had stolen the hand truck that Defendant dropped its "investigation."

26.   It was Defendant's company policy to recognize drivers publicly with awards that were given out in front of all employees for accomplishments such as positive customer reviews or good safety records.

27.   Plaintiff routinely witnessed white drivers receive public recognition of such awards.

28.   However, rather than receive an award in front of his co-workers in keeping with Defendant's practice, Plaintiff was called into a private office to be told that he had received an award, unlike other white drivers. During this meeting, Defendant proceeded to downplay the award and any accomplishment by also bringing up disciplinary issues while Plaintiff was in the office.

29.   Upon information and belief, promotion by Defendant allows for subjective evaluation of candidates which has fed a policy and culture of discrimination against black employees. The greater the discretion in hiring and promotional decisions, the smaller the percentage of black supervisors and managers.

30.   Upon information and belief, Defendant has just one black manager for full-time drivers who identifies as Dominican in the Oceanside center.

31.   In or around January 2015, Plaintiff was appointed by the Union to be the Safety Chairman for the Uniondale facility. This was a high-profile role, where Plaintiff would have the opportunity to regularly meet and confer with upper UPS management. In addition, as this position required the employee to arrive one (1) hour before their shift to handle various safety-related issues, there was an opportunity for increased income.

32.   Plaintiff was told multiple times that Defendant did not want him involved. Repeatedly, Chris Travaglia threatened to terminate Plaintiff if he started early, which he was required

to do because he was Safety Chairman. Plaintiff would follow Travaglia's direction not to start early, and was therefore not able to serve in this role effectively. Defendant would also conduct meetings without Plaintiff's knowledge.

33. Upon information and belief, non-black employees with disciplinary issues are not fired. Instead, Defendant promotes these individuals into higher positions.

34. For example, non-black driver Mike Spatafora was found to have committed workers' compensation fraud in or around 2013. However, instead of being terminated, Mr. Spatafora was promoted to supervisor in or around 2014.

35. Upon information and belief, black employees are disciplined or fired for minor infractions which do not result in termination for non-black employees.

36. Plaintiff was terminated for delivering a "late next-day air." However, other non-black drivers such as Kevin Grimes routinely delivery next-day airs late but do not get disciplined.

37. In addition, upon information and belief, Defendant covered up accidents of non- black drivers or did not discipline non-black drivers for having three (3) or more accidents contrary to company policy.

38. For example, David Bermudez, a white driver, had four (4) accidents but was not disciplined or terminated.

39. Kevin Grimes, a non-black driver, also had multiple accidents but UPS management would just authorize the repair of his vehicle but did not report the accident or discipline Mr. Grimes.

40. However, upon information and belief, black drivers, are disciplined or terminated for having four (4) or more accidents.

41. Upon information and belief, Defendant implemented a custom and policy of

discrimination by routinely and systematically promoting a racially hostile environment and by refusing to address the concerns of black employees within UPS.

42.   On or about November 21, 2013, Defendant placed a *hangman's noose* in full view of Plaintiff and other employees within the workplace, with malicious intent and, alternatively, a clear, reckless, and unlawful disregard for the racial animus displayed by such an overt act.

43.   Plaintiff complained to Division Manager, Joe Reimo, that the noose was offensive to black employees, but the noose remained on display for at least two (2) weeks following his complaints. Reimo responded to Plaintiff's complaint that he "liked the way it looked."

44.   Defendant implemented or condoned policies and practices meant to negatively affect the terms and conditions of black employees' employment in favor of non-black employees.

45.   Plaintiff was required to stay the full eight (8) hours of work even after finishing all the deliveries assigned to him for the day while non-black drivers were routinely permitted to clock out and still be paid for a full day.

46.   Specifically, on one occasion in or around December 31, 2014, Plaintiff was directed to wash Defendant's trucks in order to fill up the remaining time on his shift. Paul Luchasik said to Plaintiff and two other black drivers, Joft Perceval and Ralston Boswell, "[i]f you want to get paid for 8 hours you need to work full 8 hours." Luchasik then said: "[p]ick your poison" referring to a mop, wet wipes, and broom to wipe down the trucks. Plaintiff pointed out to Luchasik that everyone else got to go home.

47.   Upon information and belief, Defendant routinely denies light duty assignments to black employees in favor of non-black employees.

48.   Plaintiff was denied light duty work for an injury and then observed a non-black driver Rick Russo obtain light duty work right after Plaintiff's request was denied.

49.   Plaintiff also witnessed non-black driver Kevin Moller obtain light duty and questioned Chris Travaglia about why he could not get assigned light duty, despite requesting same. Travaglia responded to Plaintiff by saying: "[w]e don't have light duty for someone like you. We don't want you here."

50.   Racially motivated and offensive comments were routinely made by Defendant to Plaintiff in the workplace.

51.   In or around the peak season of 2012, Plaintiff was advised by his supervisor Tim Quinn that UPS management had directed him to work Plaintiff "like a slave."

52.   In the Spring of 2013, when Plaintiff and another black driver were running as candidates to be union shop stewards, Bill Burgess told drivers not to vote for them because they "didn't like white people" and instead to vote for white driver, Rich Collette, in an attempt to ostracize Plaintiff and to create a racially divisive atmosphere.

53.   In or around Spring 2014, Joe Reimo said "I liked it better when you guys didn't have rights" to Plaintiff and his shop steward during a disciplinary meeting.

54.   Upon information and belief, Defendant targeted black employees who opposed racial discrimination.

55.   As a shop steward, Plaintiff routinely pointed out the disparate discipline imposed by Defendant on black drivers.

56.   When Plaintiff asked supervisor Bill Burgess why black drivers were disciplined differently than non-black drivers, instead of answering the question, Burgess called Plaintiff a "racist."

57.   On multiple occasions, Chris Travaglia and Bill Burgess told Plaintiff that they would "go after" any driver associated with him.

58.   In addition, during the years of 2013 and 2014, Joe Reimo would have weekly Thursday

meetings where he would advise new drivers to "stay away from Jason Jessup and Ralston Boswell" or they would "not have a career."

59. Plaintiff was constantly targeted for discipline in order for Defendant to set him up for termination.

60. For example, while Plaintiff was out on workers' compensation leave, he provided updated medical documentation of his status as required by Defendant. When Plaintiff returned from leave, Defendant accused him of failing to inform them of his medical status and told him he was going to be terminated. Defendant claimed they never received his medical documentation. However, Plaintiff had also provided copies of his medical updates to his shop steward, who was able to produce the documents and the disciplinary charges were dropped.

61. Ultimately, in August 2015, Defendant's efforts to set Plaintiff up for termination prevailed. Defendant's given reason for termination was that he delivered a next-day air package late.

62. Furthermore, after Plaintiff filed a multi-party action against UPS in March 2016 (which was later severed and resulted in the filing of the instant action), Defendant was served with current employee Mike Costanza's notice of deposition on or around January 18, 2017. Shortly thereafter, Mr. Costanza was put on Notice of Discharge by Defendant on or about February 9, 2017. Such witness tampering is further indicative of the Defendant's unlawful practices and disregard for the law.

## FIRST CLAIM FOR RELIEF
### (Violation of § 1981)

63. Plaintiff repeats and reiterates the allegations set forth in the previous paragraphs with the same force and effect as though fully set forth herein.

64. The above referenced conduct was part of a pattern and practice of discrimination and

retaliation against Plaintiff in the terms and conditions of his employment based on race, national origin, and color, by Defendant, their agents and employees, all of which violates 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991.

65. Defendant, by and through their agents and employees, sought to deprive the Plaintiff of equal protection, privileges, benefits, and opportunities as afforded to similarly situated non-black employees.

66. By creating and fostering discriminatory practices, Defendant violated Plaintiff's rights to be free from discrimination in the workplace.

67. By allowing, perpetrating, condoning or failing to address, remedy or change, the aforementioned discriminatory actions, Defendant deprived Plaintiff of the full and equal benefit of the laws.

68. Defendant acted with malice and/or reckless indifference to Plaintiff's constitutionally protected rights.

69. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continue to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

70. Plaintiff is entitled to an award for damages for past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

71. Due to the severity of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Violation of NYSHRL -Racial Discrimination and Hostile Work Environment)

72. Plaintiff repeats and realleges each and every allegation contained herein.

73. Defendant discriminated against Plaintiff in violation of the NYHRL by discriminating

10

and/or retaliating against them in compensation or in the terms, conditions or privileges of their employment on account of his race, color and national origin.

74.   Defendant subjected Plaintiff to discrimination and unwelcome harassment based on his race, color and national origin.

75.   As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting emotional distress, embarrassment, humiliation, mental and physical anguish.

76.   As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits such as the loss of health insurance, pension, vacation, life insurance and similar benefits.

77.   Plaintiff is entitled to an award for damages for past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

## DEMAND FOR JURY TRIAL

78.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

**WHEREFORE,** as a result of the unlawful conduct and actions of the Defendant herein alleged, Plaintiff demands judgment as follows:

      i.     declaring Defendant violated the aforementioned statutes;

      ii.     awarding equitable relief, including the reinstatement of Plaintiff;

      iii.    awarding compensatory and punitive damages, where applicable, in an amount to be determined at trial, but in any event to exceed $1,000,000.00;

      v.     awarding Plaintiff costs of this suit;

      vi.    awarding reasonable attorneys' fees;

vii.    awarding pre- and post-judgment interest; and

viii.   awarding such other and further relief as the court deems just and proper.

Dated: Farmingdale, New York
     March 17, 2017

                                        **FRANK & ASSOCIATES, P.C.**

                            By:    ___/s/_____
                                   Neil M. Frank
                                   Patricia L. Boland
                                   500 Bi-County Blvd., Ste. 465
                                   Farmingdale, New York 11735
                                   Tel. (631) 756-0400
                                   Fax (631) 756-0547
                                   nfrank@laborlaws.com
                                   *Attorneys for Plaintiff*